In January 1987 White and Stafford Furniture Co., Inc. (White and Stafford) filed a complaint in the District Court of Limestone County, Alabama, alleging that Dennis Billions was in default on a retail installment contract. The complaint alleged that the balance of the contract was $1,538.47 plus costs.
Billions answered, admitting that he owed White and Stafford, but disputed the amount alleged in the complaint. Subsequently, Billions amended his answer to assert a counterclaim and raise affirmative defenses.
After a hearing the district court found that White and Stafford was not entitled to recover from Billions. On the counterclaim the district court found that Billions was entitled to recover $100 from White and Stafford.
After its post-trial motion was denied, White and Stafford appealed to the circuit court. Billions filed a second amended answer, which asserted additional affirmative defenses.
After a hearing the trial court entered judgment. The court found that White and Stafford was entitled to recover $1,535 from Billions. After his post-trial motion was denied, Billions appeals.
The record reveals that White and Stafford operates a furniture store located in Ardmore, Tennessee. White and Stafford is a Tennessee corporation authorized to do business in Tennessee. Billions, a resident of Ardmore, Alabama, purchased goods from the White and Stafford store in Ardmore, Tennessee, on three separate occasions.
In September 1984 Billions purchased a washing machine and made monthly payments until he completed paying for it in March 1986. In March 1986 Billions purchased a television and a waterbed from White and Stafford. In September 1986 he purchased a chain saw, and the monthly payments were consolidated with the payments for the bed and the television, which had not been paid in full. Billions testified that he signed retail installment contracts and security agreements for each of these three purchases while at the store. Copies of each of these contracts, along with payment booklets, were received through the mail two to four days after each purchase. The washer and the bed were delivered and set up by White and Stafford at the Billions home in Ardmore, Alabama, while Billions carried the television and the chain saw with him the day of the purchase.
White and Stafford filed the present action after Billions fell behind three payments and did not respond to its requests for payment.
In his first issue Billions contends that, because White and Stafford is a foreign corporation not qualified to do business in Alabama, it should not be allowed to enforce its contracts in Alabama's courts.
A contract entered into in this state by a nonqualified corporation is void and unenforceable. Ala. Const. art. XII, § 232; Ala. Code (1975), § 10-2A-247 (1987 Repl. Vol.);Sea Scaping Construction Co. v. McAtee, 402 So.2d 919
(Ala. 1981). However, that provision does not apply if the nonqualified corporation's activities are considered to be "interstate" in nature. Johnson v. MPL Leasing Corp.,441 So.2d 904 (Ala. 1983); Kentucky Galvanizing Co. v.Continental Casualty Co., 335 So.2d 649 (Ala. 1976). Therefore, we must determine whether the activities of White and Stafford are "interstate" or "intrastate" in nature.
The performance of certain services — assembly, maintenance, and repair — within this state under a contract executed in another state are merely incidental activities to the contract and should not be considered intrastate in nature. In the Matter of Delta MoldedProducts, Inc., 416 F. Supp. 938 (N.D.Ala. 1976),aff'd, *Page 880 571 F.2d 957 (5th Cir. 1978); Houston Canning Co. v. Virginia CanCo., 211 Ala. 232, 100 So. 104 (1924). We must not confuse the test for minimum contacts sufficient for service of process upon a foreign corporation with the test for determining whether a foreign corporation must qualify to do business in the state prior to initiating an action in Alabama's courts.Johnson, 441 So.2d 904.
The activities of White and Stafford within the State of Alabama consisted of delivery, set-up, repair work, and requests for payment when Billions fell behind in his payments. We find these activities to be merely incidental to the retail installment contract entered into in the State of Tennessee.
In his second issue Billions argues that, because White and Stafford violated provisions of the Alabama Mini-Code, §§5-19-6 and -11, Ala. Code (1975) (1981 Repl. Vol.), the retail installment contract and the underlying transaction are rendered unenforceable.
The retail installment contract was made in Tennessee. The question becomes whether the provisions of the Alabama Mini-Code are applicable to the retail installment contract in this case. Alabama recognizes "that a contract is governed as to its nature, obligation, and validity by the law of the place where it was made, unless the parties intend the law of some other place to govern, or unless it is to be wholly performed in some other place." Ex parte Owen, 437 So.2d 476,481 (Ala. 1983).
There is no indication in the record that the parties intended that Alabama law apply to this contract. Therefore, Tennessee law would apply to the retail installment contract, and the provisions of the Alabama Mini-Code would not be applicable.
In a third issue Billions asserts that White and Stafford violated § 8-19-5(22), Ala. Code (1975) (1984 Repl. Vol.), of the Deceptive Trade Practices Act when it took a nonpurchase money security interest in the washer. When Billions purchased the chain saw in September 1986, he had not completed paying for the television and bed which had been purchased in March 1986. The monthly payments for the three items were consolidated. However, the retail installment contract listed the washer (which he completed paying for in March 1986) instead of the bed as security for this extension of credit. The contract correctly listed the television and the chain saw as security.
The bookkeeper for White and Stafford testified that she mistakenly listed the washer as collateral on the September 1986 contract when she should have listed the water bed. This action was the result of a human error rather than any attempt to "[engage] in any . . . unconscionable, false, misleading or deceptive act or practice in the conduct of trade or commerce." § 8-19-5(22). There has been no showing by Billions that he suffered any monetary damages as a result of this error on the part of White and Stafford. That is the test for a private right of action under the statute. Ala. Code (1975), §8-19-10 (1984 Repl. Vol.). It does not appear that Billions has a cause of action under the Deceptive Trade Practices Act.
In his final issue Billions argues that White and Stafford violated the provisions of the Federal Truth-In-Lending Act and Regulation Z when it changed the annual percentage rate (APR) on the September 1986 contract after he had signed it by writing over the number on the face of the contract. The bookkeeper testified that she wrote 21.00% in the APR box of the contract and Billions signed the contract. Later that day she took the contract to the bank (because the items were financed through First National Bank of Pulaski, Tennessee) where an employee of the bank examined the contract and requested that she change the APR from 21.00% to 20.99%. The bookkeeper testified that she complied with this request by writing over the number on the face of the contract. Billions contends that this rendered the APR illegible and violated the provisions of the Federal Truth-In-Lending Act.
In its order the trial court found that:
 "As to the violation of the Truth-In-Lending Act, this Act under Regulation Z requires that the annual percentage rate *Page 881 
be shown. The evidence showed that after the contract had been signed by the Defendant the annual percentage rate had been changed from twenty-one to twenty point nine nine. There is no evidence at the time the Defendant signed the contract and the annual percentage rate was shown to be twenty-one that it was not readable or illegible. The alleged illegibility occurred after it was changed. The document after the change was still clearly readable in that it showed twenty point nine nine. Such a change is a de minimis change and is not worthy of consideration by this Court."
The bookkeeper testified that she filled out the contract which listed the APR as 21.00% while Billions was in the store and that he then signed the contract. The testimony reveals that the APR was changed at the bank after the contract had been signed and that any illegibility resulted from that change.
Regulation Z, 12 C.F.R. § 226.17 (1988), provides that the required disclosures must be "clearly and conspicuously in writing." Although Billions testified that all the blanks were not filled in when he signed the contract at the store, the bookkeeper and another employee of the White and Stafford store testified that the contract was complete and that all required disclosures were made prior to the time that Billions signed the contract.
Regulation Z, 12 C.F.R. § 226.17(e)(1988), provides:
 "(e) Effect of subsequent events. If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation, although new disclosures may be required under paragraph (f) of this section, § 226.19, or § 226.20."
Regulation Z, 12 C.F.R. § 226.17(f) (1988) provides:
 "(f) Early disclosures. If disclosures are given before the date of consummation of a transaction and a subsequent event makes them inaccurate, the creditor shall disclose the changed terms before consummation, if the annual percentage rate in the consummated transaction varies from the annual percentage rate disclosed under § 226.18(e) by more than 1/8 of 1 percentage point in a regular transaction, or more than 1/4 of 1 percentage point in an irregular transaction, as defined in § 226.22(a)."
The trial court found that the APR was disclosed in written form and in a legible manner prior to the time that Billions signed the contract. The change made after the contract was signed was only 0.01% and favored the consumer. We find no violation of either paragraph (e) or (f) of § 226.17. Therefore, we affirm the trial court on this issue.
This case is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975. This opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.