RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0379p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BRENDA LANGLEY,

        *Plaintiff-Appellant,*

      *v.*

DAIMLERCHRYSLER CORPORATION; DEBRA
LOBZUN,

        *Defendants-Appellees.*

No. 06-3219

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 04-07676—David A. Katz, District Judge.

Argued: November 30, 2006

Decided and Filed: September 18, 2007

Before: DAUGHTREY and McKEAGUE, Circuit Judges; REEVES, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael D. Portnoy, Rossford, Ohio, for Appellant. Thomas J. Gibney, EASTMAN & SMITH, Toledo, Ohio, James R. Knepp, II, ROBISON, CURPHEY & O'CONNELL, Toledo, Ohio, for Appellees. **ON BRIEF:** Michael D. Portnoy, Rossford, Ohio, for Appellant. Thomas J. Gibney, Heidi N. Eischen, EASTMAN & SMITH, Toledo, Ohio, James R. Knepp, II, ROBISON, CURPHEY & O'CONNELL, Toledo, Ohio, for Appellees.

_____

## OPINION

_____

    McKEAGUE, Circuit Judge. Brenda Langley ran into problems with her coworkers while working for DaimlerChrysler Corporation. The personnel problems escalated to the point that Langley took a leave of absence from the company. She placed the blame for her problems on DaimlerChrysler and one of her coworkers, Debra Lobzun. After failing to resolve the matter internally, Langley sued.

_____

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

The district court considered Langley's claims and evidence in light of the defendants' requests for summary judgment. Finding no genuine issue of material fact on any of her claims, the district court granted judgment to the defendants. On appeal, Langley maintains that the district court erred in several ways, including overreaching its subject-matter jurisdiction.

Upon review of the record and applicable law, we affirm.

## I

Langley began working for DaimlerChrysler as a production worker, and eventually moved up to production supervisor. Langley had difficulty working with some of the employees she supervised, including Lobzun. In April 2004, Langley was summoned to meet with the members of the company's Local Response Team ("LRT"), which investigates troublesome employees and situations. The LRT told Langley that Lobzun had reported that "someone was going to pull a Daryl Richardson" on Langley. JA 337. Richardson was a supervisor who was beaten with a baseball bat in an incident well-known to employees, including Langley. The LRT's investigation revealed, however, that no employee had actually threatened Langley. The team reported its findings to Langley.

After her meeting with the LRT, Langley felt unable to return to her job. She went to her family doctor, who advised her to take some time off work due to the stress she was experiencing. She took a leave of absence from the company, but has since returned.

During her leave of absence, Langley sought short-term disability benefits through DaimlerChrysler's Disability Absence Plan ("DAP"), which provides salary payments to employees who are unable to perform all the duties of their occupation. DaimlerChrysler denied her claim.

Langley then brought suit against DaimlerChrysler and Lobzun in Ohio state court. DaimlerChrysler removed the case to federal court. Langley's Second Amended Complaint set forth claims against DaimlerChrysler for: wrongful discharge in violation of Ohio public policy; age discrimination in violation of Ohio Revised Code § 4112.02 and Ohio public policy; sex discrimination in violation of Ohio Revised Code § 4112.02 and Ohio public policy; intentional infliction of emotional distress; violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"); breach of contract; and disability discrimination in violation of Ohio Revised Code § 4112.02. She also made a claim against Lobzun for intentional infliction of emotional distress.

After the close of discovery, the defendants moved for summary judgment. Langley filed her own motion for partial summary judgment. The district court granted the defendants' motions, denied Langley's motion, and entered judgment in favor of the defendants on all counts.

## II

### A.    *Fed. R. Civ. P. 56*

We review *de novo* the district court's grant of summary judgment. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006). Summary judgment is justified "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We consider the evidence and draw all reasonable inferences in favor of Langley as the nonmoving party. *Mahon v. Crowell*, 295 F.3d 585, 588 (6th Cir. 2002). To survive summary judgment, she must provide evidence beyond the pleadings setting "forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**B.**    *Langley's DAP Claim*

Langley asserted an ERISA claim for benefits under the company's DAP. ERISA provides an eligible employee the right to bring a cause of action against a plan administrator, but only for violating a plan governed by that statute. *See* 29 U.S.C. § 1132(a)(1)(B). The district court concluded that DaimlerChrysler's DAP was not an ERISA plan, but rather a payroll practice, even though the company's summary plan description ("SPD")[1] included statements from which an employee might conclude the company represented the DAP to be covered by ERISA. Langley argues that the district court committed reversible error.

"Determining the existence of an ERISA plan is a question of fact to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person, which is reviewed for clear error." *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 847 (6th Cir. 2006) (citing *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996)). In general, courts apply a three-part test to determine whether ERISA covers a particular plan or practice: (1) first, does a "safe harbor" exception apply; (2) if not, do "the surrounding circumstances" suggest that "a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and the procedures for receiving benefits"; and 3) has "the employer established or maintained the plan with the intent of providing benefits to its employees." *Thompson*, 95 F.3d at 434-35 (internal quotation marks and brackets omitted). Here, the district court's analysis started and ended at the first step.

Under ERISA, the terms "employee welfare benefit plan" and "welfare plan" are defined as:

any plan, fund, or program which has heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death or unemployment, . . . .

29 U.S.C. § 1002(1). Under the Department of Labor's regulations, however, "normal compensation" paid to an employee as a result of a disability and from "the employer's general assets" does not constitute an employee welfare benefit plan, but instead is considered a "payroll practice." 29 C.F.R. § 2510.3-1(b)(2). Such practices are not regulated by ERISA. *Abella v. W.A. Foote Mem'l Hosp.*, 740 F.2d 4, 5 (6th Cir. 1984).

Langley does not dispute that DaimlerChrysler made DAP payments entirely out of its general assets. Nor does she assert that recipients received anything other than "normal" compensation under the plan. Accordingly, the DAP falls squarely within the plain meaning of a payroll practice. This is not, however, the end of our analysis.

Langley correctly points out that DaimlerChrysler made statements in its SPD from which an employee might conclude that the DAP was an ERISA plan (which is presumably why she pleaded an ERISA claim). DaimlerChrysler argues on appeal that it does not conflate the group insurance benefits (covered under ERISA) with the DAP, as the benefits are described in the SPD. The company fails, however, to address any of the specific statements relied upon by the district court for finding otherwise. For example, the SPD states that "[t]hese plans are designed to meet the legal requirements for employee benefit plans" under ERISA. JA 294. The company does not refer us to any statement in the SPD which excludes the DAP from "[t]hese plans" – in fact, the DAP

---

[1] The term "SPD" includes both the original summary plan description and a January 2004 summary of material modifications for the DaimlerChrysler "Salaried Employees' Life and Disability Plan."

is listed directly above the "[t]hese plans" statement. *Id.* As DaimlerChrysler has pointed to no clear error by the district court, the next step is to consider whether, as Langley argues, the district court erred in attaching little weight to this and other statements in the SPD.

A review of the case law and record confirms that the district court did not err. Although we have not had occasion to address the issue, several of our sister circuits have considered whether an employer's description of a plan as one governed by ERISA is determinative. In *McMahon v. Digital Equipment Corporation*, the First Circuit affirmed a lower court's finding that a disability benefit plan was covered by ERISA. 162 F.3d 28 (1st Cir. 1998). The company had held the plan out to its employees and the federal government as an ERISA plan. Moreover, the company funded the disability payments with insurance as well as general assets. The First Circuit concluded that the combination of these facts weighed in favor of an ERISA plan, not a payroll practice. The court emphasized, however, the limitations of its holding:

> We do not hold that an employer's *mere labeling* of a plan determines whether a plan is an ERISA plan, since this also could lead to a form of "regulation shopping." But where, as here, an employer partially funds a plan from sources outside of its general assets, files documents with the Department of Labor and the IRS consistent with the plan's ERISA status, and informs employees that the plan is subject to ERISA regulation, we find that the plan is an ERISA plan and not a payroll practice.

*Id.* at 38 (emphasis added).

Several years later, the Eleventh Circuit faced a similar issue, but concluded the payroll-practice exception did apply. In *Stern v. IBM*, the company argued that its disability benefit program was an ERISA plan because it held the benefit out as such to employees and the federal government. The Eleventh Circuit rejected this argument:

> The way in which an employer characterizes its plan may be one factor, among others, in determining ERISA coverage. *See, e.g.*, *Whitt* [*v. Sherman Int'l Corp.*], 147 F.3d [1325,] 1331 [(11th Cir. 1998)] ("[A]lthough not dispositive of the issue, we note that [the employer] never made an ERISA filing with the federal government . . . until after [the employee] was fired."). Nevertheless, even if IBM has treated the Program as an ERISA plan with respect to government filings, its mere labeling of the plan should not determine whether ERISA applies. *See McMahon*, 162 F.3d at 38. Allowing this could lead to a form of "regulation shopping." *Id.* Where, as here, an employer pays an employee's normal compensation for periods of mental or physical disability entirely from its general assets, the program constitutes an exempted payroll practice under 29 C.F.R. § 2510.3-1(b) and not an ERISA plan.

326 F.3d 1367, 1374 (11th Cir. 2003). District courts within our circuit have followed this reasoning. *See, e.g.*, *Miller v. PPG Indus.*, 278 F. Supp. 2d 826, 831 (W.D. Ky. 2003) ("Where an employer pays an employee's normal vacation benefits entirely from its general assets, the program constitutes an exempted payroll practice. . . . An employer cannot change this result by labeling an otherwise exempted plan as an ERISA plan, especially in the case of vacation benefits where ERISA would provide employees fewer benefits than most state laws.").

There are sound reasons supporting this approach. As first alluded to in *McMahon*, a contrary ruling would enable employers to engage in regulation shopping. If, by merely labeling a particular benefit an "ERISA plan," an employer could convert an otherwise exempt benefit into one covered under ERISA, it could avoid state tort liability under ERISA-preemption doctrine.

Moreover, when benefits are paid solely from general assets, the protections of ERISA are not necessary. ERISA is intended to protect employees from abuses and mismanagement of private

retirement and welfare funds controlled by employers or third parties. *Massachusetts v. Morash*, 490 U.S. 107, 112-16 (1989); *Stern*, 326 F.3d at 1372. "Where an employer pays occasional, temporary benefits from its general assets, there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits." *McMahon*, 162 F.3d at 36. Rather, employees face the same general risk with their disability payments as they do with their wages or salaries: the company might not have enough general assets to pay them. *See Alaska Airlines v. Or. Bureau of Labor*, 122 F.3d 812, 814 (9th Cir. 1997) ("Under the repayment agreement, the airline's employees would still receive their benefits if the trust fund were mismanaged or held no assets, but they might not receive their benefits if the airline itself became insolvent. They depend on their employer for sick pay in the same way that they depend on it for wages. The risk of non-payment in those circumstances" lies "beyond the purpose of ERISA.").

We agree with the approach in *McMahon* and *Stern*, and adopt it here: mere labeling by a plan sponsor or administrator is not determinative on whether a plan is governed by ERISA. Other than the arguably ambiguous description of the DAP in the SPD, Langley points to no other aspect of the DAP that would bring it under the ERISA rubric. There is no evidence that DaimlerChrysler treated the DAP as an ERISA plan in its filings with the federal government, nor is there any evidence that the company partially funded benefits from a source other than general assets. Further, whether, as alleged by Langley, the company used the same notice requirements for the initial denial of DAP benefits as it did for ERISA-governed benefits has negligible import here. Accordingly, as the DAP plainly falls under the definition of a payroll practice, it was not covered by ERISA and the district court properly denied Langley's claim for disability-absence benefits.

## C.     *Subject-Matter Jurisdiction*

Once the district court concluded that the DAP was not an ERISA plan, it no longer had subject-matter jurisdiction over any of her claims, according to Langley. She argues that the district court should not have accepted removal in the first instance, or, at the very least, should have remanded her state-law claims rather than assert supplemental jurisdiction over them. Although she did not question the district court's subject-matter jurisdiction in the proceedings below, she can do so on appeal, as subject-matter jurisdiction is not subject to waiver or forfeiture. *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1244 (2006).

Several of our sister circuits have addressed whether the existence of an ERISA plan is a prerequisite for federal subject-matter jurisdiction, and they are split. The majority of courts have concluded that it is a prerequisite: "Where federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." *Kulinski v. Medtronic Bio-Medicus*, 21 F.3d 254, 256 (8th Cir. 1994) (citations omitted); *see also Tinoco v. Marine Chartering Co.*, 311 F.3d 617, 623 (5th Cir. 2002) (affirming the district court's finding that a plan was not governed by ERISA, and therefore it did not have subject-matter jurisdiction); *UIU Severance Pay Trust Fund v. Local Union No. 18-U*, 998 F.2d 509, 510 & n.2 (7th Cir. 1993) (explaining that "the existence of an 'ERISA-governed plan' is an essential precursor to federal jurisdiction"). Departing from these circuits, the Third Circuit has concluded otherwise. Rather than incorporating the elements of a claim for benefits set out in 29 U.S.C. § 1132(a)(1)(B) into the jurisdiction-granting provision of § 1132(e), the Third Circuit draws a  sharp distinction between the two:

> ERISA gives United States district courts subject matter jurisdiction of claims brought pursuant to 29 U.S.C. § 1132(a)(1)(B), which authorizes a cause of action for benefits due under an employee benefit plan. *See* 29 U.S.C. § 1132(e) (jurisdiction). Although § 1132(a) and § 1132(e) are related, the viability of a claim under § 1132(a)(1)(B) and jurisdiction pursuant to § 1132(e) are separate matters, and they should not be confused. . . . In ERISA cases such as this one, the existence

of an employee benefit plan is integral to the merits of a claim for benefits under § 1132(a)(1)(B). Here, the district court concluded that a plan did not exist. That conclusion related to the viability of the claim but not to the district court's jurisdiction.

*Henglein v. Informal Plan for Plant Shutdown Benefits*, 974 F.2d 391, 397 (3d Cir. 1992) (footnote omitted).

We have not yet addressed the question directly,[2] and we decline to do so here because there was an adequate basis for subject-matter jurisdiction regardless of whether the DAP was an ERISA plan. Although she did not explicitly cite to ERISA in her original complaint, Langley did make several broad references to ERISA-related matters, including assertions of lost "benefits," "pension benefits," and "leave benefits." These terms refer to benefits broader than just short-term disability benefits under the DAP—for example, the claim for lost "pension benefits" is separate than a claim for disability benefits. As we have "repeatedly recognized," "virtually all state law claims relating to an employee benefit plan are preempted by ERISA," and are therefore removable. *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991).[3] A plain reading of her complaint confirms that the district court had subject-matter jurisdiction regardless of its finding on the DAP claim, thus permitting the court to assert supplemental jurisdiction over her state-law claims.

## D.    *Langley's State-Law Claims*

Only a brief discussion is warranted regarding the merits of Langley's state-law claims. Although she appealed the district court's summary judgment on all of her claims, she did not raise in her briefs any specific error related to her claim against Lobzun. At oral argument, her counsel argued that by including in the Joint Appendix her response brief filed in the district court below, she preserved all of her arguments made in that brief, including those against Lobzun. That is plainly not the rule, and we deem any claim of error related to Lobzun as waived. *See* Fed. R. App. P. 28; *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (noting with disapproval the failure

---

[2]In *Abella*, a panel of this court affirmed, in a *per curiam* opinion, a district court's finding that no ERISA plan existed. 740 F.2d at 5. The panel agreed with the lower court that the plan at issue clearly fell within the payroll-practices exemption. *Id.* It did not address, however, the district court's dismissal of the action for lack of subject-matter jurisdiction, rather than for failure to state a claim. *Id.* There is no indication that the parties confronted the panel with the issue.

In an unpublished decision, Judge Cole, writing in dissent, briefly discussed the subject-matter jurisdiction/merits issue. The majority in *Campbell v. International Paper* affirmed (without discussion) a district court's dismissal of a cause of action under Fed. R. Civ. P. 12(b)(6) because the agreement at issue did not constitute an ERISA plan. 83 F. App'x 93 (6th Cir. Dec. 2, 2003) (unpublished). In dissent, Judge Cole noted:

As a procedural matter, where the sole basis for federal subject matter jurisdiction is ERISA but the evidence fails to establish the existence of an ERISA plan, the case should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), not for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6).

*Id.* at 94 n.1 (Cole, J., dissenting).

[3]Moreover, we note that Langley cited both the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (the "ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* in support of several of her claims. While DaimlerChrysler did not point to these federal statutes in its removal notice and the time for doing so has since passed, *see* 28 U.S.C. § 1446(b), the judicial "interests of 'finality, efficiency, and economy'" weigh in favor of considering her reliance on these federal statutes when determining whether the district court had jurisdiction. *Ayres v. General Motors Corp.*, 234 F.3d 514, 518 n.6 (11th Cir. 2000) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75 (1996)).

of the plaintiffs to mention an issue "in either their main brief or their reply brief" and concluding that the "issues not fully developed and argued [were] waived").

As to DaimlerChrysler, Langley's counsel focused on constructive discharge during oral argument. Her counsel could, however, find no support in the law or record for that claim, given that Langley continued to be employed by the company. In her briefs, Langley failed to discuss or cite to the district court's analysis in any detail. Fundamentally, she did not address the multiple evidentiary deficiencies that the district court found in her claims. As Langley has not addressed the controlling issues or only "adverted to [them] in a perfunctory manner, unaccompanied by some effort at developed argumentation," she has waived them. *Indeck Energy Servs. v. Consumers Energy*, 250 F.3d 972, 979 (6th Cir. 2000) (citations omitted).

### III

The DAP was not an ERISA-plan, and therefore Langley's ERISA claim was properly denied. The district court had subject-matter jurisdiction because Langley's complaint involved several claims sufficiently related to ERISA to invoke federal-question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) independent of her DAP claim. The district court, therefore, had supplemental jurisdiction to reach her state-law claims. As she has not shown any error on those claims, the district court properly denied her any relief.

AFFIRMED.