NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0809n.06

Nos. 07-6470, 08-5325

**FILED**

**Dec 18, 2009**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

LEONARD GREEN, Clerk

MEDISON AMERICA, INC.,

    Plaintiff-Appellant,

v.

PREFERRED MEDICAL SYSTEMS, LLC,
JERRY K. MCGUIRE, and GREGG REED,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
TENNESSEE

Before: MOORE and KETHLEDGE, Circuit Judges; and BERTELSMAN, District Judge.[*]

KETHLEDGE, Circuit Judge. Medison America, Inc. ("Medison") appeals the district court's grant of summary judgment in favor of Preferred Medical Systems, LLC, Jerry K. McGuire, and Gregg Reed (collectively, "Preferred") with respect to Medison's claims under the Lanham Act and the statutory and common law of various states. Medison also appeals several of the district court's discovery orders and its award of costs to Preferred. We affirm.

I.

Medison is a subsidiary of Medison Company Limited, a Korean manufacturer of ultrasound equipment. Medison sells its equipment wholesale to dealers who then resell the equipment to

_____

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

medical providers. Medison competes with General Electric, which manufactures ultrasound equipment that it sells through its own representatives. Preferred Medical Systems, LLC is one such representative; McGuire is its owner, and Reed an employee.

Medison alleges that Preferred told prospective customers that Medison was in bankruptcy and unable to service its ultrasound equipment (the "Medison Story"). According to Medison, Preferred knew the Story was false, and told the Story to prospective customers in Alabama, Georgia, Mississippi, and Tennessee.

Medison filed this action in federal court, asserting claims under the Lanham Act, 15 U.S.C. § 1125(a)(1), and the trade-disparagement and antitrust statutes of various states. Medison also asserted state common-law claims for fraud, commercial disparagement, conspiracy to injure business, conversion, and tortious interference with business relations.

The parties thereafter engaged in discovery and motion practice. During the course of discovery, Preferred obtained a protective order quashing one of Medison's subpoenas and limiting the scope of two depositions. In addition, shortly before the discovery deadline, Medison moved to depose 17 additional witnesses after the deadline. The district court denied the motion.

At that point—after 22 months of litigation in federal court—Medison filed an essentially identical action in Tennessee state court. Medison then filed a motion in the district court, asking it to abstain from exercising jurisdiction in the case. Medison also moved to amend its complaint in the federal action, to strip out from it the allegations giving rise to federal jurisdiction. The district court denied both motions.

Preferred separately moved for summary judgment. The district court granted that motion. This appeal followed.

## II.

## A.

Medison challenges the district court's denial of its motion to abstain from exercising jurisdiction over the case. We review that denial for an abuse of discretion. *Great Earth Cos. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002).

Medison argues that the district court was required to abstain under the rule stated in *Younger v. Harris*, 401 U.S. 37 (1971). That argument is meritless, given that Medison itself brought this case in federal court and then filed essentially the same suit in state court two years later in a brazen attempt to forum-shop.

Medison next argues that the district court should have abstained on prudential grounds. Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them[,]" in rare circumstances a district court may decline to exercise jurisdiction in the interest of judicial efficiency. *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817-18 (1976). Here, the district court correctly observed that two considerations—namely, that the federal suit was filed first, and the relative progress of the state and federal cases—favored exercising jurisdiction. No consideration favored abstention. We have no quarrel with those findings. The district court did not abuse its discretion by denying Medison's motion to abstain.

Medison argues that its abstention motion should have been treated as a motion for voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2). For two reasons, this argument is

unavailing. First, no motion was ever made under Rule 41(a)(2), so it would be unfair to fault the district court for not abstaining or dismissing under that rule. Second, the rule states that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Clearly, the district court did not think it proper to relinquish the case so that Medison could prosecute its claims in state court, given how far the litigation had developed.

Medison also appears to argue that the district court lost jurisdiction over the case once Medison filed its motion to amend the complaint. The proposed amendments would have stripped the complaint of its allegations giving rise to federal jurisdiction. Those amendments never took effect, however, because the district court denied leave to make them. *See* Fed. R. Civ. P. 15(a)(2). The district court did not abuse its discretion in doing so, given that the proposed amendments were a transparent attempt to manipulate the court's jurisdiction nearly two years after Medison itself had invoked that jurisdiction. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing "bad faith" as a reason to deny leave to amend). We therefore reject this argument as well.

B.

Medison also challenges three of the district court's discovery orders. We review those orders for an abuse of discretion. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

Medison argues that the district court wrongly entered a protective order that quashed a subpoena for one deposition and limited the scope of two others. Medison sought to take these depositions primarily to obtain testimony regarding alleged sexual misconduct completely unconnected with this commercial dispute. The sexual inquiries appeared to have no purpose apart from litigation *in terrorem*; and the district court did not abuse its discretion by prohibiting them.

Medison also sought testimony regarding McGuire's resale of used ultrasound equipment, among similar matters, in transactions unrelated to this case.  But here too, the district court sought simply to limit discovery to issues relevant to this case.  The court did not abuse its discretion in doing so.

On July 9, 2006, the district court entered a joint scheduling order setting the deadline for all depositions as March 30, 2007.  On March 13, 2007, Medison moved to enlarge the time for depositions.  Judge Vescovo held a telephonic hearing on the motion on March 16, 2007 and denied the motion by written order on March 19, 2007.  In that order, however, she permitted the deposition of 17 physicians upon written questions, noticed by Medison for March 30, 2007.  Shortly thereafter, Medison canceled those depositions and sought reconsideration of the court's denial of its motion to extend discovery.  Following a hearing, the court denied the motion by electronic order written into the docket on July 26, 2007.  Medison claims this was error.

Medison's argument proceeds as follows: The 17 witnesses live more than 100 miles from the court and cannot be subpoenaed to appear in court.  Their testimony would have to be secured by deposition so that the transcripts could be submitted at trial.  In this way, the depositions would be the equivalent of trial testimony.  Because witnesses appearing in person need not be deposed before trial, Medison asserts it had no obligation to depose the 17 witnesses by the discovery deadline.

For three reasons, we find that the district court did not abuse its discretion.  First, if Medison intended to depose witnesses for the purpose of memorializing testimony that could be introduced in transcript form as part of its case-in-chief at trial, it could have asked for a separate, later deadline for those depositions to be put into the scheduling order.  This is especially true if Medison intended

to introduce evidence from those 17 witnesses at the summary-judgment stage. Second, the fact that the district court set March 30, 2007 as the deadline for "all depositions" in its order of March 19th makes it reasonable for the defendants to expect that there would be no further depositions of any kind after that date. Third, Medison offers no evidence that it was prejudiced by not being able to take the depositions. *See In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) ("Matters of docket control and conduct of discovery are committed to the sound discretion of the district court. We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant") (internal quotation marks omitted).

Finally, Medison argues that the district court's order regulating depositions by written questions misapplied Federal Rule of Civil Procedure 31. Normally, under this rule, the parties serve upon each other, at specified intervals, their respective direct, cross-examination, and redirect questions for the deponent, *see* Fed. R. Civ. P. 31(a); and then they serve all of the questions upon the deponent in one batch. Here, Medison's announcement of its intention to take such depositions came too late in the discovery period for the parties to exchange their questions before the discovery deadline. So the district court ordered Medison to serve its questions on the deponent first, with Preferred and then Medison serving their cross-examination and redirect questions, respectively, after reviewing the deponent's responses to the preceding questions. We see no abuse of discretion in this process under the circumstances present here. And in the end, Medison never even served its written questions upon the deponent, which prevents it from demonstrating any prejudice. *See*

*generally Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999). Medison's argument is meritless.

C.

Medison next challenges the district court's summary-judgment order. "This Court reviews a district court's grant of summary judgment *de novo*." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence cited by the nonmovant must be admissible at trial. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007).

Medison first argues that the district court misallocated the burden of proof for Preferred's motion by requiring Medison to prove that summary judgment was improper. But Medison was required to produce "evidence on which the jury could reasonably find" in its favor as to each element of its claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Here, Preferred "point[ed] out to the district court that there [was] an absence of evidence to support [Medison's] case." *Celotex*, 477 U.S. at 325. In ruling on that ground, the district court did not misallocate any burden with respect to Preferred's motion.

Medison next argues that it produced sufficient evidence to withstand summary judgment on each of its many claims. We turn first to its Lanham-Act claim, which requires proof of "some

causal link between the challenged statements and harm to the plaintiff." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999). Medison had no such proof here. In opposing Preferred's motion, Medison submitted two affidavits, both allegedly from prospective customers who had heard the Medison Story. But one affiant, Dr. Austin, bought Medison's products despite the Story. The other, Dr. Sigman, says only that Preferred's sales pitch—including the Story—caused him not to buy from *Preferred*. Neither of those affidavits, therefore, prove that the Story harmed Medison. Medison now cites its verified complaint as proof, but the complaint offers legal conclusions rather than testimony on this point. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989).

At oral argument, Medison introduced a theory that the Story harmed Medison by forcing it to expend extra money and effort to sell its products. As an initial matter, Medison's opening brief did not clearly articulate this theory, so it was waived. *See Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (concluding that "issues not fully developed and argued were waived") (internal quotation marks omitted). Moreover, the record contains no evidence showing that Medison actually made such expenditures. Consequently, Medison has not created a genuine issue of material fact as to this theory. Summary judgment as to Medison's Lanham-Act claim was therefore proper.

Several of Medison's state-law statutory claims for trade-disparagement likewise require proof of causation. These claims include Medison's claim under Tennessee Code § 47-18-104, *see Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (holding that the provision creating a private cause of action under the statute requires proof of causation); its claim under

Alabama Code § 8-19-5, *see Billions v. White & Stafford Furniture Co.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988) (same); and its claim under Georgia Code § 10-1-372, *see Friedlander v. HMS-PEP Prods., Inc.*, 485 S.E.2d 240, 242 (Ga. Ct. App. 1997) (same). Each claim fails for the reasons stated above.

Medison asserts claims under the antitrust statutes of Tennessee, *see* Tenn. Code Ann. § 47-25-101, and Mississippi, *see* Miss. Code Ann. § 75-21-1. In Tennessee, a plaintiff must prove that the defendant entered into an anticompetitive agreement that "affects Tennessee trade or commerce to a substantial degree." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005). The only effects that Medison cites here are its own alleged injuries, which do not amount to a "substantial" effect on Tennessee trade or commerce as a whole. *See id.* For the Mississippi claim, Medison similarly must show that Preferred monopolized, or attempted to monopolize, a particular market in Mississippi. *See Wicker v. Union County Gen. Hosp.*, 556 So. 2d 297, 300 (Miss. 1989). Medison has produced no evidence of that here. The antitrust claims therefore fail.

A bushel of common-law claims remain. Medison offers no distinctions between the laws of the various states under which it asserts these claims, so we analyze them under general common-law principles. Medison asserts claims for trade disparagement and tortious interference with business relations. Those claims require proof of causation, *see* Restatement (Second) of Torts §§ 623A, 766B, and thus fail for the same reasons its statutory trade-disparagement claims did. Medison also asserts conversion claims, but has produced no evidence that Preferred ever had dominion or control over any of its property. Those claims therefore fail. *See* Restatement (Second) of Torts § 222A(1). Medison's fraud claims require evidence that *Medison* relied upon Preferred's

misrepresentations, *see* Restatement (Second) of Torts § 525, but Medison has no such evidence. Hence those claims fail too.

Medison's Tennessee-law claim for civil conspiracy requires proof that Preferred used a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *See Dale v. Thomas H. Temple Co.*, 208 S.W.2d 344, 353 (Tenn. 1948). For the reasons already stated, Medison did not produce admissible evidence creating a genuine issue that Preferred acted unlawfully in Tennessee. This claim therefore fails.

That leaves only Medison's claim under Mississippi Code § 75-24-5. Private actions under that statute can be brought only by a "person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property" as a result of the alleged disparagement. Miss. Code Ann. § 75-24-15. Medison is not such a person—it is a business—so this claim fails.

For each of Medison's claims, therefore, it failed to produce admissible evidence creating a genuine issue as to at least one element. Consequently, summary judgment was proper as to all of them.

Finally, Medison contends that the district court improperly awarded the costs of litigation to Preferred. Medison made no effort, however, to develop this argument in its brief. It has therefore waived the issue. *See Langley*, 502 F.3d at 483.

The district court's judgment is affirmed.