*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

L. ALAN DAFT; CHARLES P. HARRIMAN;
HARRY CANAVESI; ANTOINETTE MANCING;
BRYCE SMITH; MARK SMITH; ROBERT
O'LEARY; MARILYN NECKES; MICHAEL
KEIM; JAMES KEIM,

　　　　　　　*Plaintiffs-Appellees,*

　　　*v.*

ADVEST, INC.; MERRILL LYNCH & CO., INC.;
LOU DIMARIA; FRANK PAPARELLA; GLENN
DITTES,

　　　　　　　*Defendants-Appellants.*

Nos. 08-3212; 10-3151

_____

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 06-01876—James S. Gwin, District Judge.

Argued: April 21, 2011

Decided and Filed: September 23, 2011

Before: KENNEDY, BOGGS, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Mark A. Jacoby, WEIL, GOTSHAL & MANGES LLP, New York, New York, for Appellants. William Zavarello, Akron, Ohio, for Appellees. **ON BRIEF:** Mark A. Jacoby, WEIL, GOTSHAL & MANGES LLP, New York, New York, John B. Nalbandian, TAFT, STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellants. William Zavarello, Akron, Ohio, Matthew J. Koch, Akron, Ohio, Janet I. Stich, Akron, Ohio, for Appellees.

———————————

## OPINION

———————————

CORNELIA G. KENNEDY, Circuit Judge.  In this action under the Employee Retirement Income Security Act ("ERISA"), Plaintiffs brought suit for the improper denial of pension benefits under Defendant Advest, Inc.'s Account Executive Nonqualified Defined Benefit Plan (the "AE Plan" or "Plan").  After Plaintiffs exhausted their claim before the Administrative Committee for the AE Plan (the "Committee" or "AE Plan Committee") and both parties briefed an appeal from the Committee's denial of benefits, the district court granted summary judgment to Plaintiffs on their claim that the AE Plan violated ERISA's vesting requirements.  Defendants now appeal, arguing that the district court lacked subject-matter jurisdiction over the case because the AE Plan does not meet ERISA's definition of an "employee pension benefits plan."  Alternatively, they challenge the district court's holding that the AE Plan violates ERISA's vesting requirements, asserting that the Plan is a top-hat, deferred-compensation plan and is therefore exempt from ERISA's substantive protections.

In light of the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), and related cases, we hold that the existence of an ERISA plan is not, as Defendants argue, a jurisdictional issue, but rather speaks to whether Plaintiffs can state a claim upon which relief may be granted.  Accordingly, we hold that Defendants have waived their argument that the AE Plan is not an ERISA plan by neglecting to raise it until after the district court had granted summary judgment to Plaintiffs.  Nevertheless, we **REVERSE** the district court's decision that the AE Plan is not a top-hat plan on the grounds that the district court should have remanded this issue to the AE Plan Committee for expansion of the administrative record.

**I.**

On October 1, 1992, Advest, a securities brokerage firm, established the AE Plan for a "select group of highly compensated account executives." The Plan's stated purpose is "to ensure that the overall effectiveness of [Advest's] compensation program will attract, retain and motivate qualified account executives." Any account executive employed by Advest was automatically enrolled as a "Participant" in the Plan upon grossing commissions above a specified threshold in a given year. Thereafter, a Participant accrued cash benefits under the Plan based on yearly gross commissions. The Plan provide that these accrued benefits would be paid out to Participants after they had been enrolled in the Plan for ten years and had reached a specified age. However, the Plan also contains a number of provisions that, if triggered, would result in the discontinuance of all benefit payments and the forfeiture of any benefits accrued, regardless of how long a Participant has been enrolled in the Plan. For example, a Participant's termination of employment with Advest, unless it occurs after the Participant turns sixty-five or due to disability, forfeits all accrued benefits. Forfeiture also occurs when a Participant starts working for a rival securities brokerage firm after terminating employment with Advest.

Plaintiffs L. Alan Daft, Charles Harriman, Harry Canavesi, Antoinette Mancing, Bryce Smith, Mark Smith, Robert O'Leary, Marilyn Neckes, Michael Keim, and James Keim[1] are all former Advest account executives who resigned in late 2005, following the announcement that Defendant Merrill Lynch & Co. was to acquire Advest. Prior to their resignation, each Plaintiff had participated in the AE Plan for at least seven years. Shortly after Plaintiffs left Advest, they each became employed by other securities brokerage firms. By the terms of the AE Plan, Plaintiffs' resignations and their subsequent employment forfeited their Accrued Benefits.

---

[1] The identities of the Plaintiffs in this case have not remained constant throughout this litigation. The Plaintiffs listed here are those that are currently parties to the suit, though Plaintiffs O'Leary, Neckes, Michael Keim, and James Keim were not added until midway through the proceedings before the district court, and another Plaintiff, Mark Bilski, was named in the original complaint but terminated before the district court entered any substantive orders. For simplicity's sake, we refer to Plaintiffs collectively throughout.

On July 3, 2006, Plaintiffs filed suit in Ohio state court against Defendants Advest, Merrill Lynch, and the members of the AE Plan Committee, claiming that Defendants' refusal to pay them their Accrued Benefits under the Plan constituted a breach of contract and a breach of the covenant of good faith and fair dealing. Defendants promptly removed the case to the United States District Court for the Northern District of Ohio, alleging that the AE Plan was an employee benefit plan under ERISA and Plaintiffs' state-law claims were therefore preempted by ERISA. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-66 (1987).

On November 16, 2006, the district court granted both parties' request for a stay to allow them to pursue administrative remedies. Plaintiffs proceeded to file an application for benefits with the AE Plan Committee which, under the terms of the Plan, had "all powers necessary" to "administer and operate the Plan in accordance with [its] terms," including the power "[t]o construe [the] Plan" and "[t]o determine all questions arising in the administration of the Plan, including those relating to . . . the rights of Participants and their Beneficiaries to receive Benefits." In their application, Plaintiffs claimed entitlement to accrued benefits under the terms of the AE Plan itself and, in addition, argued that a denial of accrued benefits resulted in numerous violations of ERISA, including a violation of the minimum vesting requirements. *See* 29 U.S.C. § 1053(a)(2) (requiring that participants in a defined benefit plan acquire a nonforfeitable right to 100% of their accrued benefits after no more than seven years of service). The Committee denied Plaintiffs' application on February 22, 2007, concluding that Plaintiffs had forfeited their accrued benefits under the AE Plan. Furthermore, the Committee determined that the AE Plan did not violate any of ERISA's substantive provisions because it was a top-hat, deferred-compensation plan as defined by section 201(2) of ERISA, 29 U.S.C. § 1051(2) (excluding from ERISA's coverage "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees").

Plaintiffs then filed an amended complaint with the district court on May 9, 2007, adding Defendants Lou DiMaria, Frank Paparella, and Glenn Dittes—the members of the AE Plan Committee—and alleging that the denial of benefits constituted a breach of contract and violated ERISA. The district court directed Plaintiffs and Defendants to brief an appeal from the Committee's denial of benefits. On November 13, 2007, the district court issued an order granting judgment to Plaintiffs. *Daft v. Advest, Inc.*, No. 5:06-cv-1876, 2007 WL 7024715 (N.D. Ohio Nov. 13, 2007). Though the district court upheld the Committee's decision with respect to all of Plaintiffs' arguments that they were owed benefits on the terms of the AE Plan, the district court concluded that the Plan did not qualify as a top-hat plan, and therefore was not exempt from ERISA's vesting requirements. *Id.* at *13. The district court went on to determine, "as a matter of law, [that] the Plan is not a top-hat plan and the Plan failed to comply with ERISA's vesting requirements." *Id.* Defendants filed a motion for reconsideration on November 29, 2007, challenging the district court's ruling on the merits and on numerous procedural grounds, including that the district court erred by not remanding the top-hat issue to the Committee. The district court denied the motion, *Daft v. Advest, Inc.*, No. 5:06-cv-1876, 2008 WL 190436 (N.D. Ohio Jan. 18, 2008), and Defendants timely appealed.

On October 30, 2009, Plaintiffs and Defendants filed a joint submission on post-judgment remedies in the district court. In this filing, Defendants for the first time in three years of litigation raised the argument that the district court lacked subject matter jurisdiction over the case, alleging that the AE Plan did not fit the definition of an "employee pension benefit plan" covered under ERISA. After conducting a hearing, the district court issued an opinion holding that the Plan was an ERISA pension plan and that it therefore had jurisdiction over the case. *Daft v. Advest, Inc.*, No. 5:06-cv-1876, 2010 WL 271421 (N.D. Ohio Jan. 15, 2010). It also concluded that Plaintiffs were entitled to a monetary remedy for Defendants' ERISA violations under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and awarded Plaintiffs prejudgment interest and attorneys fees. Defendants filed a timely appeal, which was consolidated with their earlier appeal.

## II.

Defendants first claim that the AE Plan is not a "plan" as that term is defined in ERISA, *see* 29 U.S.C. § 1002(2), (3), and that, as a result, federal courts do not have subject-matter jurisdiction over this case, *see id.* § 1132(a)(1)(B), (e)(1).  Defendants originally removed this action to the district court by taking the opposite position; they presented this jurisdictional objection to the district court only after it had granted Plaintiffs summary judgment.  Nevertheless, the district court considered and ultimately rejected Defendants' argument that the AE Plan is not an ERISA plan, assuming without question Defendants' assertion that the existence of an ERISA plan is a prerequisite to federal jurisdiction.  *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.").  We disagree with that assumption, and hold that the existence of an ERISA plan is a nonjurisdictional element of Plaintiffs' ERISA claim.

The district court granted Plaintiffs relief on their claims under section 502(a)(1)(B) of ERISA, which allows "a participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Section 3 of ERISA defines "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  29 U.S.C. § 1002(3).  Plaintiffs allege that the AE Plan is an "employee pension benefit plan," which means:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
>> (i) provides retirement income to employees, or
>>
>> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A). The district court agreed, determined that the AE Plan violated ERISA's vesting requirements, *see* 29 U.S.C. § 1053, and awarded Plaintiffs monetary damages for this statutory violation, *Daft v. Advest, Inc.*, No. 5:06-cv-1876, 2010 WL 271421, at *3-4 (N.D. Ohio Jan. 15, 2010) (citing *West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 484 F.3d 395, 405 (6th Cir. 2007) (awarding plaintiff monetary relief under section 502(a)(1)(B) when terms of plan resulted in an underpayment of benefits that violated ERISA)).

The district court's jurisdiction to impose this judgment, and this court's jurisdiction to hear Defendants' appeal, hinges on whether this action falls within federal-question jurisdiction. Federal courts have subject-matter jurisdiction over "all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. Additionally, section 502(e)(1) of ERISA provides, in relevant part, that "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraph[] (1)(B) . . . of subsection (a) of this section." 29 U.S.C. § 1132(e)(1). Thus, Plaintiffs "invoked federal-question jurisdiction under § 1331 [and ERISA section 502(e)(1)], but [their] case 'arise[es]' under a federal law, [ERISA], that specifies, as a prerequisite to its application, the existence of a particular fact," that is, the existence of an ERISA plan. *Arbaugh*, 546 U.S. at 513 (third alteration in original). Thus, we must decide "whether that fact is 'jurisdictional' or relates to the 'merits'" of an ERISA claim. *Id.*

As we noted in *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475 (6th Cir. 2007), "[s]everal of our sister circuits have addressed whether the existence of an ERISA plan is a prerequisite for federal subject-matter jurisdiction, and they are split," *id.* at 482. The Third Circuit has concluded that the existence of an ERISA plan speaks to the viability of a plaintiff's claim and not to a federal court's jurisdiction to hear that claim:

> ERISA gives United States district courts subject matter jurisdiction of claims brought pursuant to 29 U.S.C. § 1132(a)(1)(B), which authorizes

a cause of action for benefits due under an employee benefit plan. *See* 29 U.S.C. § 1132(e) (jurisdiction). Although § 1132(a) and § 1132(e) are related, the viability of a claim under § 1132(a)(1)(B) and jurisdiction pursuant to § 1132(e) are separate matters, and they should not be confused.

*Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*, 974 F.2d 391, 397 (3d Cir. 1992). However, most circuits have adopted the position that "[w]here federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994); *accord Tinoco v. Marine Chartering Co.*, 311 F.3d 617, 623 (5th Cir. 2002); *Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46-47 (2d Cir. 2002); *Delaye v. Agripac, Inc.*, 39 F.3d 235, 238 (9th Cir. 1994); *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 510 & n.2 (7th Cir. 1993). Though this Court has "not yet addressed the question directly," *Langley*, 502 F.3d at 482, we have affirmed a district court's dismissal of an ERISA claim for lack of jurisdiction on the grounds that no ERISA plan existed, *Abella v. W.A. Foote Mem'l Hosp., Inc.*, 740 F.2d 4, 5 (6th Cir. 1984) (per curiam), and considered on the merits a defendant's self-styled "jurisdictional" argument, raised for the first time on appeal, that no ERISA plan existed, *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 516-17 (6th Cir. 1995). In neither case did we comment on the propriety of treating the issue as jurisdictional.[2]

Now that the time has come to confront the question head-on, we find that recent Supreme Court precedent has abrogated the conclusion, assumed in our previous cases and explicitly adopted in the majority of our sister circuits, that the existence of an ERISA plan is a prerequisite to federal subject-matter jurisdiction. In the last several years, the Court has repeatedly warned that jurisdiction "'is a word of many, too many,

---

[2]Additionally, one judge of this court, in an unpublished dissent, has stated that "[a]s a procedural matter, where the sole basis for federal subject matter jurisdiction is ERISA but the evidence fails to establish the existence of an ERISA plan, the case should be dismissed for lack of subject matter jurisdiction . . . not for failure to state a claim for relief." *Campbell v. Int'l Paper*, 83 F. App'x 93, 94 n.1 (6th Cir. 2003) (Cole, J., dissenting).

meanings'" that have sometimes led courts to "profligate . . . use of the term." *Arbaugh*, 546 U.S. at 510 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)). "Because the consequences that attach to the jurisdictional label may be so drastic, [the Court] ha[s] tried in recent cases to bring some discipline to the use of this term." *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011); *see also Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243-44 (2010); *Union Pacific R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 130 S. Ct. 584, 596 (2009); *Arbaugh*, 546 U.S. at 510-11; *Eberhart v. United States*, 546 U.S. 12, 18-19 (2005) (per curiam); *Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004); *Kontrick v. Ryan*, 540 U.S. 443, 454-455 (2004). Of particular relevance is *Arbaugh*, which counsels that "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." 546 U.S. at 511 (internal quotation marks omitted).

In *Arbaugh*, plaintiff Jenifer Arbaugh brought suit under Title VII against her former employer, Y & H Corp., charging sexual harassment. After Arbaugh prevailed in a jury trial, Y & H moved to dismiss the action for lack of jurisdiction, asserting for the first time that, because it had less than fifteen employees, it did not fit the definition of an "employer" that Title VII makes amenable to suit. *See* 42 U.S.C. § 2000e(b). The district court granted Y & H's motion, and the court of appeals affirmed. The Supreme Court reversed, "hold[ing] that the numerical threshold [incorporated into the definition of employer] does not circumscribe federal-court subject-matter jurisdiction," but rather "relates to the substantive adequacy of Arbaugh's Title VII claim, and therefore could not be raised defensively late in the lawsuit." *Arbaugh*, 546 U.S. at 504. First, the Court pointed out that treating a statutory requirement as a jurisdictional limitation precipitates significant consequences, notably that a party can never forfeit or waive challenges to the court's jurisdiction and a court has an independent obligation to ensure that jurisdictional prerequisites are met. *Id.* at 514. Given the potential for "unfairness and waste of judicial resources" that inhere when subject-matter jurisdiction depends upon disputed factual issues, *id.* at 515 (internal quotation marks and alteration omitted), the

Court imposed the "readily administrable bright[-]line" rule, *id.* at 516, that Congress must "clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional," *id.* at 515. Conversely, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516. Applying this principle to the dispute before it, the Court reasoned as follows:

> Of course, Congress could make the employee-numerosity requirement "jurisdictional," just as it has made an amount-in-controversy threshold an ingredient of subject-matter jurisdiction in delineating diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332. But neither § 1331, nor Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3) (authorizing jurisdiction over actions "brought under" Title VII), specifies any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor. Instead, the 15-employee threshold appears in a separate provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982).

*Id.* at 514-15. Accordingly, the Court held that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Id.* at 516.

An examination of the relevant sections of ERISA does not reveal a clear statement from Congress that the existence of an ERISA plan constitutes a jurisdictional requirement. Like Title VII's jurisdictional provision, Section 502(e)(1) of ERISA grants federal courts "jurisdiction of actions under" section 502(a)(1)(B), 29 U.S.C. § 1132(e)(1), and does not "specif[y] any threshold ingredient" on which that jurisdiction depends, *Arbaugh*, 546 U.S. at 515. Section 502(a)(1)(B) gives "a participant or beneficiary" a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), and does not "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," *Zipes*, 455 U.S. at 394, *quoted in Arbaugh*, 546 U.S. at 515; neither do the definitions of "plan" or "employee pension benefit plan" in ERISA Section 3, *see* 29 U.S.C. § 1002(2), (3).

Therefore, in light of *Arbaugh* and its progeny, the existence of an ERISA plan must be considered an element of a plaintiff's claim under Section 502(a)(1)(B), not a prerequisite for federal jurisdiction. Indeed, this is the conclusion reached by several district courts that have considered this question in the wake of *Arbaugh*, even in the face of prior circuit precedent that treated the ERISA-plan requirement as jurisdictional in nature. *See, e.g.*, *Lewey v. Bitterroot Timberframes, L.L.C.*, No. CV 05-87-M-DWM, 2006 WL 2598945, at *3 (D. Mont. Aug. 10, 2006); *see also Solis v. Koresko*, No. 09-988, 2009 WL 2776630, at *5-6 (E.D. Pa. Aug. 31, 2009); *Holzer v. Prudential Equity Grp. LLC*, 520 F. Supp. 2d 922, 927-28 (N.D. Ill. 2007); *Lewey v. Bitterroot Timberframes, LLC*, No. CV 05-87-M-DWM, 2006 WL 2599101, at *1 (D. Mont. Sept. 11, 2006). *But see Campbell v. Sussex Cnty. Fed. Credit Union*, No. 10-710, 2011 WL 2532403, at *3 (D. Del. June 24, 2011) (adhering to view that "'the existence of an "ERISA-governed plan" is an essential precursor to federal jurisdiction'" (quoting *UIU Severance Pay Trust Fund*, 998 F.2d at 510)).

Our holding also squares with this court's application of the *Arbaugh* line of cases in analogous contexts. In *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515 (6th Cir. 2006), this court considered whether a federal court has jurisdiction over a suit brought under section 502(a)(3) of ERISA when a plaintiff seeks only legal relief. Section 502(a)(3) allows "a participant, beneficiary, or fiduciary" to bring a civil action "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan," 29 U.S.C. § 1132(a)(3); the Supreme Court has held that this statute authorizes only equitable, not legal, relief, *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 (2002). Though prior Sixth Circuit cases had relied on *Knudson* to dismiss section 502(a)(3) actions requesting only legal relief for lack of subject-matter jurisdiction, this court rejected that characterization based on the Supreme Court's recent remarks that "'[c]larity would be facilitated . . . if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a

court's adjudicatory authority.'" *Primax*, 433 F.3d at 518 (quoting *Eberhart*, 546 U.S. at 405 and *Kontrick*, 540 U.S. at 455).  Thus, this court held that, "like the claim-processing rules in *Eberhart* and *Kontrick*, an action under 29 U.S.C. § 1132(a)(3) seeking only legal relief does not fall outside a federal court's subject-matter jurisdiction, but instead raises the question whether a party has failed to state a claim upon which relief can be granted." *Id.* at 519.  "Although in many ERISA cases prior precedent will almost certainly preclude the sought remedy," this court continued, "the decision whether to classify a particular claim as legal or equitable presents a sufficiently substantial and non-frivolous issue for federal courts to exercise subject-matter jurisdiction over actions arising under section 1132(a)(3)." *Id.*

This court reached a similar conclusion in *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000 (6th Cir. 2009).  There, this court again broke with prior circuit precedent to hold that the existence of a union contract is an element of a plaintiff's claim under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), not a restriction on federal subject-matter jurisdiction.  *Winnett*, 553 F.3d at 1007.  Section 301(a) provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Following *Arbaugh*, this court examined section 301(a) for a clear statement from Congress that it intended to attach jurisdictional consequences to a plaintiff's failure to state the elements of her claim, and found none:  "The only direct mention of 'jurisdiction' in the statute refers to personal jurisdiction, not subject-matter jurisdiction.  And even then, the point of the reference is to ease access to the federal courts, not to impose new barriers." *Winnett*, 553 F.3d at 1006.  Additionally, this court found that "[t]he structure of the provision offers another clue that the contract requirement is non-jurisdictional," *id.*:

> *All* of the elements of a plaintiff's prima facie claim for the breach of a union contract appear in the same subsection. 29 U.S.C. § 185(a). Yet nothing in the statute offers any foothold for the notion that some of these elements of a Section 301 claim, but not others, have subject-matter-jurisdictional consequences. If the existence of a union contract limits our jurisdiction over a case, that would mean every other prima facie element of a Section 301(a) claim—that the plaintiff be a labor organization, that the defendant be a labor organization or an employer, that both the plaintiff and the defendant be parties to the contract and that the suit be "for violation of [that] contract[ ]", 29 U.S.C. § 185(a)—would have similar consequences as well. Even in the absence of *Arbaugh's* "clearly states" requirement, we should be reluctant to conclude that Congress intended to create a cause of action that has no non-jurisdictional elements.

*Id.* Thus, given the "consequences of giving a jurisdictional label to an element of a cause of action," *id.*, this court held that, "consistent with *Arbaugh*, the existence of a union contract is an element of Plaintiffs' merits claim, not a limit on federal subject-matter jurisdiction," *id.* at 1007.

A comparison between the statutes at issue in *Primax* and *Winnett* and section 502(a)(1)(B) of ERISA reveals no appreciable difference that would support a characterization of the existence of an ERISA plan as a jurisdictional prerequisite. Like section 502(a)(3) of ERISA, section 502(a)(1)(B) provides a cause of action without invoking any aspect of federal jurisdiction. And, as noted in *Winnett*, labeling the existence of an ERISA plan as jurisdictional would necessarily elevate all elements of a section 502(a)(1)(B) claim into the jurisdictional realm, giving a federal court the independent duty to ensure that, for example, plaintiffs in a section 502(a)(1)(B) action are participants or beneficiaries of the relevant plan, or the relief sought falls within the categories given in the statute. The blueprint for applying the *Arbaugh* line of cases outlined in *Primax* and *Winnett*,[3] therefore, leads to the conclusion that the existence of

---

[3] This court has taken the same approach in a number of other post-*Arbaugh* cases. *See, e.g.*, *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 483-87 (6th Cir. 2009) (determining that a breach of a union contract is not a prerequisite to federal jurisdiction over an action under § 301(a) of LMRA); *Thomas v. Miller*, 489 F.3d 293, 297-98 (6th Cir. 2007) (holding that the employee-numerosity requirement incorporated into the definition of "employer" for the purposes of the Consolidated Omnibus Reconciliation Act is not a jurisdictional matter); *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 548-50 (6th Cir. 2006) (concluding that the Family and Medical Leave Act's definitions of "employer" and "eligible employee" are not jurisdictional in nature).

an ERISA plan does not determine federal jurisdiction, but rather speaks to the viability of Plaintiffs' claim.

The circumstances of this case likewise demonstrate the prudence of categorizing the ERISA-plan issue as a merits determination. In *Arbaugh*, the Supreme Court identified the rule that objections to a court's jurisdiction can never be forfeited or waived as an important consequence of labeling an element of a claim as jurisdictional. 546 U.S. at 514. The Court further noted that, because Y & H had not contested its status as an "employer" under Title VII until after Arbaugh had won a trial on the merits, construing the employee-numerosity requirement as jurisdictional would lead to an "unfair" result and a "waste of judicial resources." *Id.* at 515 (internal quotation marks and alteration omitted). In *Winnett*, this Court further expounded on the dangers of gamesmanship in this context:

> [W]hile it would seem to be the rare party that would let a jurisdictional defect lie until it lost the initial round of litigation, there can be little doubt that a first-round loss in a case tends to sharpen the tactical focus of the losing party. Yet once the courts label an element of a cause of action jurisdictional, they have no option but to entertain lately raised arguments, whether the delay flows from initial negligence or an unsavory litigation strategy.

553 F.3d at 1007. In this instance, Defendants invoked federal jurisdiction in the first place in order to preempt Plaintiffs' state law claims under the AE Plan and move their action into federal court. Then, only after more than three years, multiple rounds of motions, and a ruling for the Plaintiffs on the merits did Defendants move to dismiss the suit on the grounds that the AE Plan did not qualify as an ERISA plan—a motion which, if they had prevailed, would have transplanted this litigation back into state court on Plaintiffs' original state-law claims. That is not to say that federal jurisdiction over Plaintiffs' suit was lacking in the first place—which, as discussed below, it was not—or that Defendants somehow consented to federal subject-matter jurisdiction by removing the case to the district court—which, as the Supreme Court has often reiterated, they cannot, *see, e.g.*, *Arbaugh*, 546 U.S. at 514. Rather, the procedural history of this case illustrates the need for a careful application of *Arbaugh*'s clear-statement rule. When

such weighty consequences are at stake, it is best to "leave the ball in Congress' court" rather than have "courts and litigants . . . wrestle with the issue." *Id.* at 515-16. Before we entertain eleventh-hour arguments like Defendants', "*Arbaugh* tells us to ask whether Congress clearly meant for us to consider them." *Winnett*, 553 F.3d at 1007. The relevant sections of ERISA do not evidence a Congressional intent, let alone a clear one, that the existence of an ERISA plan is a jurisdictional question. Therefore, it is best considered an element of Plaintiffs' claim.

Because the existence of an ERISA plan is not a jurisdictional prerequisite, federal subject-matter jurisdiction lies over Plaintiffs' suit as long as they raise a colorable claim under ERISA. That is, federal jurisdiction exists over Plaintiffs' ERISA claim unless "the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Steel Co.*, 523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). Plaintiffs have clearly met this burden, as evidenced by the fact that the district court, after considering the question on the merits, determined that the AE Plan did qualify as an ERISA plan. Defendants forfeited any objection to this element of the Plaintiffs' claim by failing to raise the issue before the district court granted summary judgment to Plaintiffs. *See* Fed. R. Civ. P. 12(h)(2) (specifying that "[f]ailure to state a claim upon which relief can be granted" may be raised "in any pleading allowed or ordered under Rule 7(a)," "by a motion under Rule 12(c)," or "at trial"); *Winnett*, 553 F.3d at 1006-07 (stating that this Court "usually require[s] timely and reasoned presentation of non-jurisdictional issues to avoid forfeiture" in order to "ensure fair and evenhanded litigation by requiring parties to disclose legal theories early enough in the case to give an opposing party time not only to respond but also to develop an adequate factual record supporting their side of the dispute"); *cf. Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) ("Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." (internal quotation marks omitted)).

**III.**

Given our holding that Defendants have forfeited their argument that the AE Plan is not an ERISA plan, the dispositive issue in this case becomes whether the AE Plan qualifies as a top-hat, deferred-compensation plan under section 201(2) of ERISA. Section 201(2) provides that a top-hat plan, or "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," 29 U.S.C. § 1051(2), is not required to comply with the substantive protections otherwise applicable to ERISA pension plans, including the vesting requirements that the district court determined the AE Plan violated. Plaintiffs presented the top-hat issue, along with their claims of ERISA violations, to the AE Plan Committee, which concluded that the AE Plan was a top-hat plan and not in violation of ERISA. The district court reversed, holding that the Committee's decision on the top-hat issue was erroneous. The district court went on to conduct a sweeping, *de novo* review of the top-hat issue, ultimately determining that the AE Plan was not a top-hat plan and awarding Plaintiffs summary judgment. On appeal, Defendants challenge this ruling on its merits, and also allege several procedural errors in the district court's decision-making process. Because the district court should have remanded the top-hat issue to the Committee, we reverse the decision of the district court.

Normally, when a plan gives its administrator discretion to construe and interpret the plan, as the AE Plan gives the Committee, a court reviews the administrator's decision on the eligibility of benefits under the "arbitrary and capricious" standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, this deferential standard does not apply to a plan administrator's determination of questions of law, such as whether a plan meets the statutory definition of a top-hat plan; a court reviews those questions *de novo*. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006) ("Claims . . . [that] are not claims for denial of benefits . . . are . . . addressed in the first instance in the district court, requiring no deference to any administrator's action or decision."); *cf. Goldstein v. Johnson & Johnson*, 251 F.3d 433,

442 (3d Cir. 2001) ("Given the unique nature of top hat plans, we believe the holding of *Firestone Tire* requiring deferential review for the discretionary decisions of administrators to be inapplicable."). Nevertheless, a court's review of a plan administrator's decision, even when *de novo*, is confined to the evidence in the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (Gilman, J., concurring).

The district court correctly rejected the decision of the Committee on the top-hat issue. In *Bakri v. Venture Mfg. Co.*, 473 F.3d 677 (6th Cir. 2007), this court listed the qualitative and quantitative factors to consider when determining whether a plan qualified as a top-hat plan under ERISA section 201(2): "(1) the percentage of the total workforce invited to join the plan (quantitative), (2) the nature of their employment duties (qualitative), (3) the compensation disparity between top hat plan members and non-members (qualitative), and (4) the actual language of the plan agreement (qualitative)," *id.* at 678. As the district court pointed out, the Committee considered only the fourth factor, basing its decision on the stated purpose of the AE Plan, the AE Plan's eligibility requirements, and the fact that Advest administered the AE Plan as a top-hat plan. The Committee's failure to consider the other factors spelled out in *Bakri* makes its decision incorrect as a matter of law.[4]

Nevertheless, the district court erred in considering the top-hat question itself without first remanding Plaintiffs' claims to the Committee. "Where a district court determines that the plan administrator erroneously denied benefits, a district court 'may either award benefits to the claimant or remand to the plan administrator.'" *Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 373 (6th Cir. 2009) (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006)). "[W]here the 'problem is with the integrity of [the plan's] decision-making process,' rather than 'that

---

[4]Defendants contend that the Committee was not required to consider the first three *Bakri* factors because Plaintiffs did not specifically cite them in their application for benefits. This argument is unpersuasive. Plaintiffs clearly raised the top-hat issue to the Committee: they both alleged that the AE Plan violated several of ERISA's substantive provisions and contested the characterization of the AE Plan as a top-hat plan. The top-hat question was squarely before the Committee, which then had the obligation to decide it according to the controlling legal standard set out in *Bakri*.

[a claimant] was denied benefits to which he was clearly entitled,' the appropriate remedy generally is remand to the plan administrator." *Elliott*, 473 F.3d at 622 (alteration in original) (quoting *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31-32 (1st Cir. 2005)).

> Generally, when a court or agency fails to make adequate findings or fails to provide an adequate reasoning, the proper remedy in an ERISA case, as well as a conventional case, is to remand for further findings or explanations, unless it is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.

*Tate v. Long Term Disability Plan for Salaried Emps. of Champion Int'l Corp. #506*, 545 F.3d 555, 563 (7th Cir. 2008) (internal quotation marks omitted), *overruled on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149 (2010). "Remand therefore is appropriate in a variety of circumstances, particularly where the plan administrator's decision suffers from a procedural defect or the administrative record is factually incomplete." *Shelby Cnty. Health Care Corp.*, 581 F.3d at 373.

These are exactly the circumstances present in this case. The Committee did not apply the proper legal standard when determining the top-hat issue, which renders inadequate the Committee's reasoning in support of its decision that the AE Plan is a top-hat plan and thus merits remand. *See Tate*, 545 F.3d at 563 (7th Cir. 2008) (determining that "remand is appropriate" when "the Plan did not provide adequate reasoning for its conclusion"). More importantly, as Defendants argue here and the district court acknowledges, there are many factual gaps in the administrative record that need filling in order to allow a reasoned determination of the top-hat issue. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1073-74 (2d Cir.1995) (remanding after determining that "[t]he present record is incomplete"). This is not a case where remand is inappropriate because "there are no factual determinations to be made," *Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000), or because the Committee "properly construe[d] the plan documents but arrive[d] at the 'wrong conclusion' that is 'simply contrary to the facts,'" *Shelby Cnty. Health Care Corp.*, 581 F.3d at 373-74 (quoting *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001). The

district court lacked crucial information relevant to the top-hat issue, a problem that can be corrected only by remanding Plaintiffs' benefit claim to the Committee. *See Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997).

Plaintiffs attempt to avoid a remand to the Committee by asserting that the district court actually made two rulings on the top-hat question: first, that the Committee's determination of the issue was arbitrary and capricious and, second, that the Plaintiffs prevailed on their "separate" statutory vesting claims. *See Daft*, 2008 WL 190436, at *3-4. As a result, the Plaintiffs maintain, a decision to remand the top-hat question to the Committee would not affect the district court's independent determination of the top-hat issue with reference to Plaintiffs' statutory claim. This reasoning is flawed. Throughout the course of the proceedings before both the Committee and the district court, Plaintiffs have consistently argued that the AE Plan violates ERISA by not conforming to its vesting requirements. This contention fails if the AE Plan is a top-hat plan, a fact that Plaintiffs recognized and therefore addressed in their application for benefits. Once the Committee ruled against Plaintiffs, they renewed their statutory vesting claim in the district court, where it did not take on a new or separate character simply by nature of the venue in which it was now up for consideration. Just because, in the past, this Court has considered the top-hat status of a plan as a first matter rather than on review of a plan administrator's benefits decision, *see Bakri*, 473 F.3d 677, does not mean that the district court can now ignore the administrative-review procedures when the top-hat issue was, in fact, presented to and ruled upon by the plan administrator, *cf. Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005) (noting that some circuits require plaintiffs to exhaust their administrative remedies prior to bringing a claim for a statutory violation of ERISA but declining to take a position). The district court was obliged to rule on Plaintiffs' statutory claims through the prism of the Committee's determination, and to remand them to the Committee if, as we find, a remand is warranted under existing case law.

The district court also stated that remand to the Committee is unnecessary because the Committee's decision was "arbitrary and capricious" given that it "shift[ed]

the burden of proof" on the top-hat issue "to the claimants." *Daft*, 2008 WL 190436, at *8. The district court correctly noted that the defendant-employer typically advocates for the top-hat status of an ERISA plan in order to avoid statutory liability, and therefore the defendant-employer typically bears the burden of proof on this issue in the district court. *See Alexander v. Brigham & Women's Physicians Org., Inc.*, 467 F. Supp. 2d 136, 142 (D. Mass. 2006) (collecting cases). We have a slightly different situation here, as Plaintiffs first raised the top-hat question in their application to the Committee in order to preempt Defendants' argument that the AE Plan qualifies as a top-hat plan. This departure from the usual sequence in which the top-hat question is raised may have contributed to the Committee's alleged "burden-shifting." *See* Admin. Comm. Dec. 13, ECF No. 36-27 ("Claimants have not alleged or established that the account executives who meet the eligibility standard set forth in the Plan and, as a result, participate in and accrue benefit [sic] under the Plan do not qualify as a 'select group of highly compensated employees.'"). Regardless, however, labeling this error as "arbitrary and capricious" does not excuse the district court from its obligation to remand Plaintiffs' claim to the Committee: like the Committee's failure to consider all four of the *Bakri* factors, it simply constitutes the application of the incorrect legal standard and is therefore an error the Committee should be given the opportunity to rectify. *See Tate*, 545 F.3d at 563. The cases cited by Plaintiffs in support of their position and relied on by the district court are not to the contrary; rather, they stand for the principle that a remand is unnecessary when the plan administrator improperly denied benefits on a full and complete administrative record. *See, e.g.*, *Williams*, 227 F.3d at 715-16. As previously discussed, this is not the situation we confront here.

Finally, Plaintiffs argue that remand is futile because the members of the Committee, who are employees of the party responsible for paying benefits, have a conflict of interest. While this type of conflict of interest can sometimes factor into a court's analysis of a plan administrator's decision, *see Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006), Plaintiffs do not cite, and we could not find, any authority for the proposition that it should affect the decision of whether to remand a claim to the plan administrator. In fact, this court has remanded benefit claims back to

the plan administrator even after finding that this exact conflict of interest somewhat tainted the administrator's review process. *See Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 392-93, 396 (6th Cir. 2009).

Therefore, we hold that the district court erred by refusing to remand Plaintiffs' claims to the AE Plan Committee after determining that their legal reasoning on the top-hat issue was flawed. We remand this case to the district court with instructions to remand Plaintiffs' claims of ERISA violations to the Committee. In light of this ruling, we find it unnecessary to consider Defendants' remaining arguments on appeal.

**IV.**

For the foregoing reasons, we **REVERSE** the decision of the district court awarding Plaintiffs damages for the AE Plan's violation of ERISA's vesting requirements, and we **REMAND** this case to the district court for proceedings consistent with this opinion.