NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0415n.06

No. 13-4084

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 08, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KAREN RUSSELL, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES |
| v. | ) | DISTRICT COURT FOR |
| | ) | THE SOUTHERN |
| CATHOLIC HEALTHCARE | ) | DISTRICT OF OHIO |
| PARTNERS EMPLOYEE LONG | ) | |
| TERM DISABILITY PLAN; UNAM | ) | |
| LIFE INSURANCE COMPANY OF | ) | **AMENDED OPINION** |
| AMERICA, | ) | |
| | ) | |
| **Defendants-Appellees.** | | |

---

**Before: MOORE and KETHLEDGE, Circuit Judges; TARNOW, District Judge.**[*]

**ARTHUR J. TARNOW, Senior District Judge.** Plaintiff-Appellant appeals the dismissal of her claim for long-term disability ("LTD") benefits under her employee compensation package. Plaintiff had worked as a registered nurse for about thirty years when she applied for disability benefits in 2007. Defendant-Appellee Unum granted Plaintiff twenty-four months of LTD benefits starting in

---

[*]The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

2007, and then terminated her benefits in 2009. Plaintiff filed her ERISA claim in 2011, wherein the district court upheld the administrative determination of Plaintiff's claim. The district court found that Plaintiff's claim was time-barred and, that even if her claim had been timely, her claim failed on its merits because the administrative decision was not arbitrary and capricious. In this appeal, we hold that Plaintiff's ERISA action was timely and that the administrative decision was not arbitrary and capricious. Accordingly, we **AFFIRM** the judgment of the district court.

Jurisdiction is not forfeitable or waivable; therefore, we must first address Plaintiff's jurisdictional arguments. *In re Lindsey*, 726 F.3d 857, 858 (6th Cir. 2013). For the reasons stated below, we hold that we have subject-matter jurisdiction to decide this appeal. Next, we hold that Plaintiff's claims are not time-barred pursuant to the intervening precedent in *Moyer v. Metro. Life Ins. Co.*, 762 F.3d 503 (6th Cir. 2014). Finally, we reach the merits of Plaintiff's claim and hold that Defendants' termination of her LTD benefits was not arbitrary and capricious.

On May 12, 2007, Plaintiff became unable to perform her occupational duties due to bilateral knee osteoarthritis, right ankle post-traumatic osteoarthritis, anxiety, and depression. Plaintiff remained disabled until November 12, 2007, satisfying Unum's six-month elimination period and becoming eligible to receive

disability benefits. In a letter dated November 15, 2007, Unum informed Plaintiff that they had approved her claim for disability benefits effective November 12, 2007. A.R. 347–48. Unum informed Plaintiff that they found her eligible for twelve months of benefits at that time because she was "limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury. . ." A.R. 348. In that same November 2007 letter, Unum informed Plaintiff "[a]fter 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience." *Id.* The November 2007 letter also informed Plaintiff of Unum's contractually reserved right to request proof of continuing disability. In the fall of 2008, Unum approved Plaintiff's eligibility for disability benefits for an additional twelve months. Throughout the twenty-four month period, Unum sent Plaintiff several written requests for proof of continuing disability.

After twenty-four months of benefits, Unum terminated Plaintiff's LTD benefits, finding that Plaintiff's medical records indicated that she could work as a Triage Nurse or Nurse Case Manager. Plaintiff exhausted Unum's internal administrative appeal process on July 20, 2010, when Unum issued its final decision denying Plaintiff's LTD benefits. A.R. 1466–72.

On March 30, 2011, Plaintiff filed an action in the district court seeking a reversal of the plan administrator's decision denying her benefits. The parties filed dueling motions in the district court—Plaintiff filed a Motion for Judgment Reversing Administrator's Decision and Defendant filed a Motion to Uphold the Administrative Decision. Each party responded and replied to both motions. The district court decided both motions in a single Order, denying Plaintiff's motion and granting Defendants' motion. R. at [39]. Plaintiff now appeals.

On appeal, Plaintiff disputes whether United States Courts have jurisdiction over this case because the plan may not be an ERISA plan. Defendants argue that whether the plan is an ERISA plan is a substantive element of Plaintiff's ERISA claim, not a jurisdictional issue. Defendants argue that Plaintiff forfeited the substantive element by filing this action and prosecuting it to judgment. Questions about subject-matter jurisdiction present legal issues, which we review de novo. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).

In *Daft v. Advest, Inc.*, 658 F.3d 583 (6th Cir. 2011), the Sixth Circuit analyzed whether the presence of an ERISA plan is jurisdictional under the rubric in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006). We held that "the existence of an ERISA plan is a nonjurisdictional element of Plaintiffs' ERISA claim." *Advest*, 658 F.3d at 587. "[T]he existence of an ERISA plan must be considered an

element of a plaintiff's claim under [29 U.S.C. § 1132](a)(1)(B), not a prerequisite for federal jurisdiction." *Id*. at 590–91. There is no basis to find that the plan here is different from the plan in *Advest*, and thus we consider the existence of an ERISA plan to be a substantive element of the claim rather than jurisdictional in this case.

Plaintiff argues the underlying plan might be a "church plan" that is not an ERISA plan. "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 590 (quoting *Arbaugh*, 546 U.S. at 516). ERISA's jurisdictional provision does not predicate jurisdiction upon whether a plan meets the definition of a "church plan." 29 U.S.C. § 1132(e)(1). Both the provision defining what qualifies as a "church plan"—29 U.S.C. § 1002(33)—and the provision stating whether such a plan is covered by ERISA—29 U.S.C. § 1003(b)(2)—are separate from ERISA's jurisdictional provision.

In *Advest*, this Court reasoned that fairness also weighed against treating the existence of a plan as jurisdictional because the party arguing against jurisdiction on appeal was the party that originally invoked federal jurisdiction. 658 F.3d at 593. The interests of fairness also compel a nonjurisdictional conclusion here. It was Plaintiff who initially invoked federal jurisdiction in 2011 and then, over two years into the litigation, after Defendants prevailed in trial court, raised the issue of

jurisdiction. Whether Defendants' plan is an ERISA plan is a substantive element that Plaintiff forfeited, not a jurisdictional prerequisite.

The parties briefed the issue of whether Plaintiff's claim is time-barred before the Court published *Moyer*. In *Moyer*, this Court held for the first time that if an adverse benefit determination letter does not include notice of the time limits for judicial review, then the contractual time limit cannot serve as ground for denying judicial review. *Id.* at 507. Even before *Moyer*, Plaintiff relied on *Engelson v. Unum*, 723 F.3d 611 (6th Cir. 2013), in her principal brief to argue that Defendant was required to give her notice of the time limit to seek judicial review in her denial letter. As *Moyer* relied heavily on *Engelson* to reach its holding, we are convinced that Plaintiff preserved this issue for appeal. "[A]n appellate court applies the law in effect at the time it renders its decision." *RYO Machine, LLC v. U.S. Dept. of Treasury*, 696 F.3d 467, 470 (6th Cir. 2012) (internal quotation marks omitted). The record reveals that Defendant did not include notice of the time limit for Plaintiff to seek judicial review in its adverse benefit determination letters. A.R. 1255–60; 1466–72. Consequently, the plan's time limit cannot foreclose judicial review of the merits of Plaintiff's claim.

Title 29 U.S.C. § 1133 governs adverse benefit determination letters for ERISA plans. An adverse benefit determination letter that does not notify a participant of the time limit for judicial review does not substantially comply with

§ 1133. *Moyer*, 762 F.3d at 506. The usual procedure where an insurance company fails to comply with the requirements of § 1133, thereby procedurally foreclosing judicial review, is that the substantive claim should be remanded to the appropriate body for review. *VanderKlok v. Provident Life & Acc. Ins. Co., Inc.*, 956 F.2d 610, 616–17 (6th Cir. 1992). Here, however, after concluding that Plaintiff's claim was time-barred, the district court summarily ruled that the administrative termination of Plaintiff's benefits was not arbitrary and capricious without conducting any analysis. As a result of the district court's summary ruling on the merits, the parties fully briefed Plaintiff's substantive claim on appeal. Had the district court provided any analysis supporting its conclusion that the termination was not arbitrary and capricious, we would not be required to accord it any deference. *Glenn v. MetLife*, 461 F.3d 660, 665 (6th Cir. 2006) (holding that circuit courts review de novo a district court's grant of summary judgment based on an administrative record in an ERISA disability benefits action). Accordingly, we now decide the merits of Plaintiff's claim.

Where, as here, a plan grants the plan administrator discretion to determine eligibility for benefits, courts review the administrator's decisions under the arbitrary and capricious standard. *Jones v. Metro. Life Ins. Co.,* 385 F.3d 654, 660 (6th Cir. 2004). Under that standard, we will uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported

by substantial evidence." *Glenn*, 461 F.3d at 666 (internal quotation marks omitted). Application of the standard requires us to consider "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* (internal quotation marks omitted).

Where, as here, the plan administrator who decides whether an employee is eligible for benefits is also obligated to pay those benefits, we are entitled to take into account the resulting conflict of interest. *Id.* (citation omitted). Plaintiff argues that Defendant's conflict of interest is evidenced by its reliance on the opinions of non-treating, consulting physicians over Plaintiff's treating doctors. To address Plaintiff's argument that the plan administrator has a conflict of interest, we will only utilize the opinions of Plaintiff's treating medical personnel in our analysis—Dr. Robert Raines—Plaintiff's treating orthopaedic doctor—and Dr. Susan McElroy-Marcus—Plaintiff's treating primary care physician.

For the first twenty-four months the plan used the following standard to determine whether Plaintiff was disabled: "You are disabled when Unum determines that: you are limited from performing the material and substantial duties of *your regular occupation* due to your sickness or injury . . ." (emphasis supplied). During this time period, Unum determined that Plaintiff was disabled from working as a Registered Nurse and Nurse Manager. After twenty-four months, the plan used the following standard to determine whether Plaintiff was

disabled: "After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of *any* gainful occupation for which you are reasonably fitted by education, training or experience" (emphasis supplied). After twenty-four months, Unum determined that Plaintiff was not disabled because she could perform as a Triage Nurse or a Nurse Case Manager A.R. 1246. Both of those jobs entail mostly seated work, with brief periods of standing, walking, and lifting no more than ten pounds on an occasional basis. A.R. 1246.

The parties' dispute centers on whether Defendant's determination that Plaintiff was not disabled under the second definition of disability was arbitrary and capricious. The plan limits awarding benefits based on mental illness or self-reported symptoms to a twelve-month period. A.R. 1470. Therefore, the plan requires objective proof that Plaintiff has a physically disabling condition to award benefits after the first twenty-four months.

Defendants determined that Plaintiff was not disabled on October 28, 2009 and terminated Plaintiff's benefits effective November 11, 2009. A.R. 1255, 1264. On September 28, 2009, Defendant contacted Dr. Raines to clarify his medical opinion as contained in a seemingly self-contradicting record. In a single form signed on September 16, 2009, Dr. Raines indicated that he was restricting Plaintiff from returning to work at any level and also that she could be assigned to sit-down

duties. When Defendant contacted Dr. Raines's office on September 28, 2009, his employee explained that Dr. Raines was of the opinion that Plaintiff could perform seated work on a full-time basis. A.R. 1217–1218, 1223. This level of limitation is consistent with the work level of which Defendant found Plaintiff to be capable.

On August 21, 2009, Dr. McElroy-Marcus opined that Plaintiff could sit for eight hours per day, stand and walk intermittently for one hour per day, lift ten pounds, occasionally push and pull, and rarely reach shoulder level. A.R. 1276. This level of limitation is consistent with seated work, which is the work level of which Defendant found Plaintiff to be capable. Given that both of Plaintiff's treating physicians found her to be capable of sedentary/seated work immediately before Defendant terminated benefits, we cannot say that the termination was arbitrary and capricious.

Plaintiff argues that Dr. McElroy-Marcus's records support the conclusion that the administrator's decision was arbitrary and capricious. Plaintiff emphasizes a record from February 4, 2008 in which Dr. McElroy-Marcus states "r ankle in brace to knee - special shoes with rockers to assist in walking . . . difficulty standing or walking any length of time." A.R. 776. This record, however, memorializes Dr. McElroy-Marcus's opinion twenty-one months before Defendant terminated benefits. Although Plaintiff argues that her conditions are progressive, Dr. McElroy-Marcus's medical opinion based on the empirical evidence before her

in the fall of 2009 was that Plaintiff could sit for eight hours per day, stand and walk intermittently for one hour per day, lift ten pounds, occasionally push and pull, and rarely reach shoulder level.  A.R. 1276.

Plaintiff also emphasizes a Physical Residual Functional Capacity Assessment that Dr. McElroy-Marcus submitted on March 27, 2010, while Plaintiff was administratively appealing Defendant's initial adverse determination. A.R. 1286–91.  Plaintiff requested this record from Dr. McElroy-Marcus for purposes of her administrative appeal after Defendant's initial adverse determination.  A.R. 1285.  The record states that Plaintiff has end-stage osteoarthritis in her right ankle, osteoarthritis in her knee, low back pain, bilateral carpel tunnel syndrome, diffuse muscle atrophy, and osteopenia.  After twenty-four months, the plan requires objective proof of physical disabilities.  Defendant agreed that Plaintiff has traumatic arthritis in her ankle. A.R. 1468.  However, there are no imaging studies in the record that support the severity of Dr. McElroy-Marcus's opinions as expressed in the March 27, 2010 record.  Nor had Dr. McElroy-Marcus ordered any imaging studies or referred Plaintiff to a specialist. Further, throughout the record, Dr. McElroy-Marcus refers Defendants to Dr. Raines for information about the status of Plaintiff's orthopaedic conditions.  *See e.g.* A.R. 461.

Plaintiff also argues that the record from September 28, 2009 indicating that Dr. Raines was of the opinion that Plaintiff could perform seated work on a full-time basis is unreliable. Plaintiff argues that the Court should not rely on the record because it indicates that Dr. Raines's employee conveyed the opinion. However, in our review we must take the administrative record as true; questioning the veracity of the administrative record for the first time on appeal is not cognizable. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (holding that when reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made).

Accordingly, we **AFFIRM** the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.** Although I agree with much of the amended opinion, I must dissent because I believe that the decision by Unum to deny benefits was arbitrary and capricious.

Unum unreasonably interpreted Dr. Raines's evaluation of Russell's ability to return to work by concluding that he had approved her return to "sedentary occupations." A.R. at 1257; Appellee Br. at 43 & n.13. A sedentary occupation is not the same as a seated-only occupation; sedentary occupations "involve walking [and] standing for brief periods of time." A.R. at 1218. Dr. Raines explicitly concluded that Russell could not perform the non-seated tasks of a sedentary occupation, and thus gave the following limitation to sedentary work: "sit down duty only." *Id. See also* A.R. 921 (Raines's evaluation of 9/10/08 stating "She is unable to perform any job that would require standing or walking."). Unum's determination to the contrary is therefore arbitrary and capricious because it ignores Dr. Raines's specific instructions.

After considering all of the evidence in the Administrative Record, I must conclude that Unum has conflated Dr. Raines's limitations on Russell allowing "sit down duty only" with an ability to perform "sedentary work." This constitutes an arbitrary and capricious determination warranting a remand. The Majority seeing this differently, I respectfully dissent.